**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony C. KOVIC, Defendant-Appellant.**

No. 81–1020.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 1981.

Decided July 21, 1982.

Rehearing Denied Aug. 17, 1982.

Certiorari Denied Nov. 1, 1982.
See 103 S.Ct. 304.

David P. Schippers, Schippers, Long & Mackay, Chicago, Ill., for defendant-appellant.

Robert W. Tarun, Asst. U. S. Attys., Vincent J. Connelly, Michael S. Blazer, Legal Intern, Dan K. Webb, U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge.

This appeal follows Defendant Kovic's conviction by a jury of twenty-three counts of mail fraud, in violation of 18 U.S.C.A. § 1341, two counts of extortion in violation of the Hobbs Act, 18 U.S.C.A. § 1951, and two counts of conspiracy to conduct the affairs of the Chicago Police Department through a pattern of racketeering activities, in violation of the Racketeer Influenced and Corrupt Organizations (RICO) chapter, specifically 18 U.S.C.A. § 1962(c) and (d). Defendant Kovic seeks reversal of his convictions alleging first that the trial court's evidentiary rulings denied him his right to testify in his own defense, and second, that the evidence failed to prove RICO crimes. We affirm.

Kovic was Chief of the Electronics and Motor Maintenance Division (EMMD) of the Chicago Police Department from 1975 to August, 1979. The EMMD purchased and maintained all police vehicles and all electronic equipment used by the Chicago Police Department. As Chief of the Division, Kovic was able to influence the selection of vendors both for purchases of new equipment and vehicles, and for maintenance and repair work. In addition, Kovic personally approved all bills received from vendors for work done on vehicles and equipment, and for items purchased by EMMD, and his signature was required before payment checks were mailed to vendors.

During his tenure as Chief of EMMD, Defendant Kovic participated in three schemes to defraud the City of Chicago. The first scheme involved employees of Motorola, Inc., a major vendor of electronic equipment to the Chicago Police Department. In addition to supplying standard electronic parts and equipment under an annual contract, Motorola would on occasion supply EMMD with equipment and parts which were not manufactured by Motorola. In such cases, Motorola would subcontract Police Department orders to other vendors, who would manufacture and deliver the equipment either to Motorola or directly to EMMD. Motorola would then add a service or "drop-ship" charge to its cost, and would invoice the City of Chicago for the total amount.

In late 1977, Robert Cox, a Motorola employee assigned to the EMMD account, formed a business called CTI Specialties Division. Thereafter, Cox and DiLeonardi, another Motorola employee assigned to EMMD, began to submit false CTI invoices to Motorola for payment. These invoices purported to be charges for goods delivered to the Chicago Police Department which in fact were never delivered. When Motorola received these false invoices and made payment on them, it forwarded a bill to the Police Department charging the amount CTI charged Motorola, plus Motorola's service charge. In March or April, 1978, Kovic

---

[*] The Honorable Wesley E. Brown, Senior District Judge of the District of Kansas, is sitting by designation.

asked the Motorola employees to obtain two large-screen television sets worth $3,000 each, one for himself and the other for a friend. Cox purchased the two sets and additional system equipment on behalf of CTI, and submitted the false CTI invoice to Motorola, which paid CTI. The Motorola employees then submitted a false Motorola invoice to the City of Chicago including the usual service charge, and Kovic caused the City to pay by approving the bill. CTI was also used to obtain other items requested by Kovic which were not for Police Department use, including a television given to a retiring employee.

The second scheme employed by defendant involved two businesses, El-En, Inc., and its parent corporation, Grand Spaulding Dodge. During 1976 and 1977, Grand Spaulding had been awarded a primary vendor contract[1] for the sale of new automobiles to the Chicago Police Department, as well as a primary vendor contract for the repair of Department vehicles. In late 1976 or early 1977, Kovic went to Grand Spaulding and demanded money. Kovic explained that he would inflate the amounts on "vehicle work orders" submitted by Grand Spaulding to the City of Chicago for payment, and that he was to be paid the difference between the inflated amounts and the charges for repairs actually done. Over the next six months, Kovic falsified work orders on seven or eight occasions in return for cash payments totalling approximately $4,500. On one occasion during this time, Kovic told one of the owners of Grand Spaulding that an expensive radar device was missing from a police vehicle which had been on the Grand Spaulding lot for repairs. Kovic demanded and was paid $4,500 in cash for the missing unit, refusing to accept a check or to wait for a response from Grand Spaulding's insurer.

The third fraudulent scheme used by Defendant Kovic for personal gain involved a transmission repair business known as Trancor, Inc., owned by Joseph Smith. In 1974, Smith submitted a bid for transmission repair work on City vehicles, and Trancor was awarded a contract as a primary vendor. Transmission repair bids were again solicited by the City in May, 1975, and Trancor submitted its second bid. On this contract, Trancor received only secondary status and a competitor, W.L.A.–AAMCO, was given primary vendor status, though the bids of the two companies were basically the same. Smith complained to Kovic several times, but his efforts to convince Kovic to change Trancor's status from secondary to primary vendor were unsuccessful, and Trancor received no Police Department business from May, 1975 to September, 1976. Trancor submitted its third bid for City transmission repair work on a contract that was to run from October 1, 1976 through July 31, 1978. When Smith discovered that Trancor was not going to be the primary vendor on the contract, despite the fact that Trancor's bid was $56 lower than the next lowest bid, he threatened to complain to higher City officials. About a week thereafter, Kovic met with Smith and demanded a kickback of 10% of Trancor's billing to the City each month in return for awarding Trancor primary status. Smith agreed to Kovic's terms, Trancor was given primary vendor status, and soon thereafter Trancor began receiving Police Department business.

When Smith brought the first payment to Kovic, during the first few days of December, 1976, Smith stated that he was opposed to submitting any false charges to cover the 10% payments, which Kovic had suggested, but thought the way to provide the 10% would be to reduce the 40% discount in the awarded contract to 30%. Kovic replied that he could arrange that, and on January 10, 1977, a change order to the contract was executed, reducing the discount from 40% to 30%. Smith delivered 10% of Trancor's billing each month in cash to Kovic for the next 25 months, that is until January, 1979, at which time Kovic agreed to receive a flat $2,000 per month instead of the 10% pay-

---

1. Vendors which were awarded "primary status" on contracts were given all the Police Department business they could perform. Sec-

ondary vendors received work only if primary vendors could not do all of the Police Department work.

ments. The $2,000 payments were made monthly until May or June, 1979. In all, Kovic received slightly less than $62,000 in kickbacks from Trancor.

The first issue raised by Kovic on appeal concerns the following events in the trial court. The government stated in a pretrial motion that it intended to offer evidence of similar offenses committed by Kovic with another vendor, Mar-Lin Automotive. Kovic then filed a motion in limine to prevent the introduction of such evidence, and during trial the court ruled that the similar-crimes evidence could not be introduced by the government in its case-in-chief. Subsequently, before the defense rested, defense counsel inquired of the court whether, if Kovic decided to testify, the government would be allowed to cross-examine him concerning the alleged illegal conduct with Mar-Lin Automotive. The court stated that cross-examination on these matters "... would depend, of course ... on the type of testimony furnished by the defendant ..." but would be allowed if they became the proper subject of cross-examination. Kovic submits that the trial court erred in so ruling, by denying defendant his right to testify in his own defense. Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The initial ruling of the District Court forbidding the use of evidence of similar acts in the government's case-in-chief conformed to the procedure suggested by *United States v. Fierson*, 419 F.2d 1020 (7 Cir. 1969). However, in this prosecution for mail fraud, Hobbs Act, and RICO violations, in which intent is an essential element of the government's case, it would not have been error for the trial court to have permitted the introduction of evidence of defendant's similar acts before the defense

put on its case. *United States v. Weidman*, 572 F.2d 1199 (7 Cir. 1978), cert. denied 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *United States v. Price*, 617 F.2d 455 (7 Cir. 1979). Certainly in this case, where two counts of conspiracy to conduct the affairs of the Chicago Police Department through a *pattern* of racketeering activities were charged, evidence that defendant acted in a manner similar to the acts charged in the indictment would tend to prove the existence of a plan or design. *United States v. Grzywacz*, 603 F.2d 682 (7 Cir. 1979), cert. denied 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980). Kovic, had he chosen to testify, could of course have drawn into question the issue of intent or any of the other listed exceptions in Rule 404(b). After a defendant "sharpens" the issue of intent, or another exception, evidence of other crimes may be admitted, if the probative value of such evidence outweighs the danger of unfair prejudice, *United States v. Marine*, 413 F.2d 214 (7 Cir. 1969), cert. denied 396 U.S. 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970), and if it is clear and convincing, *United States v. Dolliole*, 597 F.2d 102 (7 Cir. 1979), cert. denied 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979).

We agree with the District Court that its preliminary ruling forbidding the use of other-crimes evidence until Kovic "sharpened" one of the issues which made such evidence admissible had nothing to do with the right of the government to properly cross-examine Kovic had he taken the stand. As Kovic acknowledges in his brief, if a criminal defendant elects to testify in his own behalf, he may be cross-examined and his testimony impeached to the same extent as any other witness. *Fitzpatrick v. United States*, 178 U.S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900). The District Court ruled only that if Kovic testified, and evidence of other crimes became properly admissible under Rule 404(b) to prove a contested issue raised by Kovic's testimony, the government would be allowed to cross-examine him concerning that evidence. Inasmuch as the use of such evidence was conditioned not upon the mere fact of defendant taking the stand, but upon the nature of his testi-

mony, there was clearly no improper penalization of defendant's right to speak in his own behalf.

■ As his second and final issue in this appeal, Kovic contends that Counts 29 and 30, charging conspiracy to conduct the affairs of the Chicago Police Department through a pattern of racketeering activities, in violation of 18 U.S.C.A. § 1962(d), did not charge the commission of an offense. The arguments made in support of this contention are variations on a single theme, which is that Counts 29 and 30 of the indictment, and the proof at trial, were fatally insufficient to bring the Chicago Police Department within the definition of "enterprise" as that term is used in the RICO chapter. 18 U.S.C.A. § 1962 provides in part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

This Court has directly held that governmental or public entities fit within the definition of "enterprise" for purposes of RICO. *United States v. Grzywacz,* supra; *United States v. Lee Stoller Enterprises, Inc.,* 652 F.2d 1313 (7 Cir. 1981). In addition to the decisions cited in *Lee Stoller,* supra, at 1318–1319, footnote 9, from the Third, Fourth, and Fifth Circuits, the Eighth and Second Circuits have now also held that a governmental unit may be an "enterprise" under RICO. *United States v. Clark,* 646 F.2d 1259 (8 Cir. 1981); *United States v. Angelilli,* 660 F.2d 23 (2 Cir. 1981). Only the Sixth Circuit has held to the contrary, in *United States v. Thompson,* 669 F.2d 1143 (1982), and the reasoning therein was fully presented in Judge Swygert's dissenting opinion to this Circuit's *Grzywacz* deci-

sion, supra. While Kovic realizes that the Chicago Police Department in some situations might certainly be within RICO as an "enterprise", he nevertheless asserts in three integrally related arguments that it cannot be found to be one in the circumstances of this case.

First, Kovic contends that the statutory language of RICO was not intended to reach situations in which racketeering activity employed the resources of an enterprise but provided no benefit to that enterprise. As supporting authority for the proposition that an enterprise's affairs must be advanced by racketeering before a RICO violation can be found, defendant cites *United States v. Webster,* 639 F.2d 174 (4 Cir. 1981). That decision, however, was subsequently modified on rehearing, as reported at 669 F.2d 185 (1982). The Fourth Circuit there reversed its prior holding that the enterprise must have its affairs advanced or benefitted by the pattern of racketeering activity, noting that the term "conduct" in 18 U.S.C.A. § 1962(c) had been improperly limited to mean "benefit" or "advance" by the earlier opinion. "The proper question should have been whether the affairs of the (charged enterprise) were conducted through the pattern of racketeering activity, not whether they were benefitted or advanced or whether profit to the (enterprise) resulted." *Webster,* supra, 669 F.2d 185. *Accord, United States v. Welch,* 656 F.2d 1039 (5 Cir. 1981); *United States v. Scotto,* 641 F.2d 47 (2 Cir. 1980), cert. denied 452 U.S. 94, 101 S.Ct. 3109, 69 L.Ed.2d 971–972 (1981).

Defendant's second contention is that the Chicago Police Department cannot be both the enterprise, whose affairs are conducted through a pattern of racketeering activity, and the victim of the racketeering activity. This Court has not been referred to any authority for defendant's statement, and we are unable to find support for it in either case law or logic. The not-very-surprising corollary to the premise that an enterprise need not be benefitted by a pattern of racketeering activity to come under RICO is that the enterprise may in fact be

harmed by the illegal activity. "(C)riminal activity may be pursued by some persons in direct conflict with the legitimate goals pursued by others." *United States v. Stofsky*, 409 F.Supp. 609, at 613 (S.D.N.Y.1973), affirmed 527 F.2d 237 (2 Cir. 1975). We can find no indication that it is less a violation of RICO because the Police Department as the governmental enterprise, the non-participating vendors, and the citizens of Chicago were all victims of Kovic's illegal conduct.

As his final argument, defendant asserts that the government failed to prove any connection between the racketeering activity and the affairs of the Chicago Police Department because there was no showing that "any of the proceeds derived from the racketeering activities were channeled into the Police Department or were used by the Department in the conduct of its affairs." We reject this argument as a mere restatement of the theme that an enterprise must be *benefitted* through a pattern of racketeering activity before its affairs can be *conducted* through a pattern of racketeering activity. In *United States v. Nerone*, 563 F.2d 836, at 851 (7 Cir. 1977), cert. denied 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978), the word "through" in 18 U.S.C.A. § 1962(c) was interpreted to mean "by means of, in consequence of, by reason of." In the case before us, Kovic was in charge of the Chicago Police Department's vehicle and electronic equipment purchase and repair program, and he plainly used that position to conduct the affairs of the Department "by means of" a fraudulent billing scheme and kickback arrangement. The connection between Kovic's racketeering activity and the affairs of the Chicago Police Department is clear, and the fact that Kovic kept the money he obtained illegally instead of "channeling" it into the Department does not affect our determination that he conducted the Department's affairs through a pattern of racketeering activity. *United States v. Welch*, supra, 656 F.2d at 1062; *United States v. Scotto*, supra, 641 F.2d at 54.

We find no error, and the convictions appealed from are therefore Affirmed.