**LCDR (Ret.) Lawrence BROWN and Alice Brown, et al., Plaintiffs-Appellants (85–5714), Plaintiffs-Appellees (85–5715),**

v.

**CITY OF COVINGTON, Defendant-Appellee (85–5714), Defendant-Appellant (85–5715).**

Nos. 85–5714, 85–5715.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1986.

Decided Nov. 20, 1986.

Lawrence R. Elleman (argued), Cincinnati, Ohio, for defendant-appellee.

James A. Nolan, Nolan and Freihofer, Covington, Ky., Charles J. Hecht (argued), New York City, for plaintiffs-appellants.

James A. Nolan, Nolan and Freihofer, Covington, Ky., for plaintiffs-appellees.

Joseph T. Condit, Covington, Ky., Lawrence R. Elleman (argued), Cincinnati, Ohio, for defendant-appellant.

Before LIVELY, Chief Judge; MERRITT, Circuit Judge; and TIMBERS, Senior Circuit Judge.*

Second Circuit, sitting by designation.

* Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the

TIMBERS, Senior Circuit Judge.

This class action concerns a bond issue by appellee City of Covington, Kentucky ("City"), to finance the construction of a health care center. Appellants, the class of persons who purchased the bonds, appeal from a judgment entered June 17, 1985 in the Eastern District of Kentucky, Henry R. Wilhoit, Jr., *District Judge*, dismissing appellants' federal securities law claims against the City. The court held that, since government entities like the City were not specifically included within the pre–1975 definition of the term "person" in § 3(a)(9) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(9) (1974) ("1934 Act"), appellants could not maintain an action against the City under § 10(b) or Rule 10b–5. Appellants argue that the failure of Congress to include government entities like the City within the definition of "person" in § 3(a)(9) was merely a stylistic oversight.

We hold that, prior to the 1975 amendment to § 3(a)(9), cities were not within the definition of the term "person" in the 1934 Act. Consequently no action under § 10(b) or Rule 10b–5 is maintainable against the City for acts committed prior to the effective date of the 1975 amendment. We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.[1]

In June 1972, the City issued $4,425,000 principal amount of Health Care Revenue Bonds. The proceeds of these tax-exempt municipal revenue bonds were used to finance the development and construction of a City-owned, non-profit geriatric health care center. The idea for the health care center seems to have originated with the Mayor of the City and two independent promoters in early 1971. By October 1971 the promoters had set up a non-profit corporation to develop and run the health care center. Various feasibility studies were prepared at the behest of the promoters.

While the results of these studies are disputed by the parties, it appears that the first two studies found no real demand for additional health care facilities in the area, and the two later studies found sufficient demand. The health care center corporation also hired a financial advisor/underwriter for the bond issue. It was discovered later that this underwriter was controlled by one of the promoters.

The bonds were sold through a final prospectus dated June 26, 1972. Shortly after the bonds were sold the Securities and Exchange Commission ("SEC") began an investigation of the offer. This investigation ended in permanent injunctions being entered against the promoters, among others, enjoining them from future violations of the federal securities laws. *Senex Corp., supra* note 1, 399 F.Supp. at 499. News of this investigation caused the trading price of the bonds to plummet.

On November 1, 1974, the instant class action was commenced on behalf of all those persons who had purchased the bonds between the bonds' initial offering and October 1, 1974. This class included not only those persons who held bonds at the time the complaint was filed, but also those persons who had sold their bonds at a loss prior to commencement of the action (collectively "appellants"). Appellants sued various defendants, including the City. Appellants' amended complaint alleged that the June 26, 1972 prospectus materially misstated and omitted relevant information about the bond offering. Appellants alleged that the prospectus failed to disclose a profit to the promoters from the construction cost of the center; that the prospectus failed to disclose the existence of the two unfavorable feasibility studies; that the prospectus failed to disclose the relationship between the underwriter and a promoter; and that the prospectus generally misstated the health care center's chances of profitability. Appellants claimed that these omissions and misstatements caused them to buy bonds at

---

1. For a more detailed account of the facts underlying this case see *SEC v. Senex Corp.*, 399 F.Supp. 497, 499–502 (E.D.Ky.1975), *aff'd,* 534 F.2d 1240 (6th Cir.1976).

artificially inflated prices in violation of § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b)(1974), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1974). Appellants alleged that the City was aware of the omissions and misstatement and "authorized and approved" the prospectus.

After numerous motions, the district court certified the class on July 8, 1978. Discovery on the merits ensued and culminated with the City's motion for summary judgment filed on July 19, 1979. The City argued that it was not a "person" within the meaning of the pre–1975 version of § 3(a)(9) of the 1934 Act and therefore not susceptible of being held liable under § 10(b) or Rule 10b–5. While this motion was pending, the City petitioned the court for permission to sell the health care center. Under an agreement approved by the court, most of the proceeds of the sale were used to purchase United States Treasury obligations in an amount large enough to insure the payment of principal and interest on all outstanding bonds. Another $64,899.45 of the proceeds was earmarked for those class members who had sold their bonds at a loss prior to the commencement of the action. The court ordered the remaining $150,000 in sale proceeds impounded until it could rule on the City's summary judgment motion.

On April 9, 1984 the court awarded summary judgment in favor of the City. The court held that the City was not a "person" within the pre–1975 definition of that term provided in § 3(a)(9) of the 1934 Act. The court then reasoned that the City could not be held liable under § 10(b) or Rule 10b–5 because the statute only proscribes fraudulent conduct by "any person". The court also dismissed appellants' pendent state law claims against the City for lack of jurisdiction.

Appellants settled with all remaining defendants. Under the terms of these agreements all class members were fully compensated for any proven losses they had incurred. These agreements plus the sale proceeds insured that all class members' claims were fully compensated. The settlement agreements also provided for a significant award of attorneys' fees to appellants' counsel. These agreements were approved by the court in an order dated June 6, 1985. On June 18, 1985 the court disbursed the remaining $150,000 in sale proceeds to the City and entered a final judgment in the case. Appellants have appealed from that portion of the judgment awarding the City summary judgment on appellants' 1934 Act claims and the disbursement to the City of the $150,000.[2] The City has cross-appealed from the court's approval of the award of attorneys' fees to appellants' counsel.[3]

The only issue raised on this appeal is whether the City is a person within the meaning of the pre–1975 version of § 3(a)(9) of the 1934 Act. For the reasons set forth below, we hold that the City is not a person within the pre–1975 version of § 3(a)(9) of the 1934 Act and cannot be held liable under § 10(b) or Rule 10b–5 for acts or omissions committed prior to the effective date of the 1975 amendment to § 3(a)(9).

## II.

We start, as we must, with the language of the statute itself. The pre–1975 version of § 3(a)(9) of the 1934 Act provided:

"The term 'person' means an individual, a corporation, a partnership, an association, a joint-stock company, a business trust, or an unincorporated organization."

**2.** Because all of appellants' claims were fully compensated under the court-approved settlement agreements, the disposition of the $150,000, should appellants prevail on appeal and at a trial on the merits, is somewhat unclear. It appears from the terms of the settlement agreements that a substantial portion of any additional funds recovered would go to appellants' counsel as additional fees.

**3.** The City has asked that we reach its cross-appeal only in the event we upset the judgment entered below. In view of our decision in the primary appeal we dismiss the cross-appeal without deciding it.

1934 Act, ch. 404, § 3(a)(9), 48 Stat. 882. In 1975 Congress amended § 3(a)(9) to read:

"The term 'person' means a natural person, company, government, or political subdivision, agency, or instrumentality of a government."

15 U.S.C. § 78c(a)(9) (1982). Appellants have conceded that the pre–1975 version of § 3(a)(9) covers the City's bond offering. *See* Pub.L. 94–29 § 31(a), 89 Stat. 97 (1975) (effective date of amendment to § 3(a)(9) is June 4, 1975).

On its face, then, the pre–1975 version of § 3(a)(9) does not include government entities like the City. In marked contrast to the 1934 Act, the definition of "person" in the nearly contemporaneously passed Securities Act of 1933 ("1933 Act") specifically includes such government entities. Section 2(2) of the 1933 Act has provided since its enactment that:

"The term 'person' means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, *or a government or political subdivision thereof.* As used in this paragraph the term 'trust' shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security."

15 U.S.C. § 77b(2) (1982) (emphasis added). The combination of the specific inclusion of government entities in the 1933 Act definition of "person" and the omission of such entities in the 1934 Act definition of "person" strongly suggests that Congress intended government entities to be outside the scope of those provisions of the 1934 Act which require the participation of a "person". *Greenspan v. Crosbie,* [1976–1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,780 (S.D.N.Y.1976) (difference between 1933 and 1934 Acts' definition of person evinces a "clear and unambiguous" Congressional intent not to include government entities under the 1934 Act antifraud provisions).

In the face of this clear statutory language, appellants are forced to argue that the omission of government entities in the originally enacted 1934 Act definition of "person" was a mere "oversight" and Congress actually intended the antifraud provisions of the 1934 Act to cover entities like the City. We are unconvinced.

At the outset, we note that appellants face a heavy burden in persuading us that Congress did not mean what it said in the plain, unambiguous language of the 1934 Act. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980) (language of statute is controlling absent a "clearly expressed legislative intention to the contrary"). In the instant case this burden becomes almost insurmountable when it is remembered that Congress showed itself capable of saying what it meant with respect to the inclusion of government entities in the nearly contemporaneously passed 1933 Act. In light of the painstaking care with which these two watershed acts were drafted, appellants must show an unequivocal intent by the 1934 Act drafters to include entities like the City within the scope of the Act's antifraud provisions to convince us that Congress was careless in drafting the 1934 Act definition of "person".

Appellants have failed to demonstrate such unequivocal intent. The legislative history of the 1933 and 1934 Acts, in fact, hurts appellants' case. While the legislative history of the 1934 Act is silent on the reasons for the omission of government entities from § 3(a)(9), the legislative history of the 1933 Act suggests that Congress was concerned with safeguarding the states' "rights" to issue securities largely unhindered by federal law. In explaining the exemption for government issuers found in § 3(a)(2) of the 1933 Act, the House Committee Report stated, "By such a delineation, any constitutional difficulties that might arise with reference to the inclusion of state and municipal obligations are avoided." H.R.Rep. No. 85, 73rd Cong., 1st Sess., 14 (1933). In light of this legislative history, it is more likely that the omission of government entities from the definition of "person" in the 1934 Act was a manifestation of Congress' concern over states' rights rather than an inadvertent lapse in drafting prowess. *In re New York*

*City Municipal Securities Litigation*, 507 F.Supp. 169, 181–82 (S.D.N.Y.1980).

Appellants' case is further weakened by the fact that Congress thought it necessary in 1975 to amend § 3(a)(9) to include government entities. While appellants would have us believe that the amendment was nothing more than a "technical clarification", we note that the courts and commentators have viewed the amendment as subjecting municipal issuers to liability under § 10(b) and Rule 10b–5 for the first time. *Monell v. Department of Social Services*, 532 F.2d 259, 263 n. 3 (2d Cir. 1976), *rev'd on other grounds*, 436 U.S. 658 (1978) ("the definition of 'person' in § 3(a)(9) of the [1934 Act] ... did not include governmental agencies until the 1975 amendment") (dictum); *Greenspan v. Crosbie, supra,* [1976–1977 Transfer Binder] Fed.Sec.L.Rep. at 90,827 ("Any possible question concerning the interpretation of [pre–1975 § 3(a)(9)] is laid to rest by the 1975 Amendments"); Doty & Petersen, *The Federal Securities Laws and Transactions in Municipal Securities*, 71 N.W.U. L.Rev. 283 (1976). While Congress' actions in 1975 do not control our resolution of Congress' intent in 1934, we find persuasive Congress' perception that § 3(a)(9) needed an amendment to include government entities.

Appellants' only remaining argument is a retreat to the Supreme Court's oft-repeated admonition that the federal securities laws aimed at combatting fraud should not be given an overly technical interpretation, but should be read flexibly to effectuate their remedial purposes. *E.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 386–87 (1983); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963). While we agree with appellants that such noble policy goals must be given full play when the statute is ambiguous, we have found no case in which a court has used the remedial policy behind the antifraud provisions of the federal securities laws in effect to rewrite an otherwise clear section of the 1934 Act. *See Chiarella v. United States*, 445 U.S. 222, 234 (1980) ("the 1934 Act cannot be read 'more broadly than its language and statutory scheme permit' "), *quoting SEC v. Sloan*, 436 U.S. 103, 116 (1978). In effect, appellants ask us to accelerate the effective date of the 1975 amendment to § 3(a)(9) based on nothing more than the remedial purposes behind § 10(b). We have neither the power nor the inclination to rewrite the federal securities laws.

Finally, we are fortified in our view that the pre–1975 version of the definition of "person" in § 3(a)(9) does not include government entities by the like holdings of every other court that has considered the question. *In Re New York City Municipal Securities Litigation, supra; Woods v. Homes & Structures of Pittsburgh*, 489 F.Supp. 1270 (D.Kan.1980); *In Re Equity Funding Corp.*, 416 F.Supp. 161 (C.D.Cal. 1976); *Greenspan v. Crosbie, supra.* In light of this settled case law, the legislative history of the 1933 and 1934 Acts, and the 1975 amendment to § 3(a)(9), we decline appellants' invitation to hold that Congress did not mean what it said in the originally enacted § 3(a)(9).

### III.

To summarize:

We hold that prior to the 1975 amendment to § 3(a)(9) government entities like the City were not within the 1934 Act definition of the term "person". Therefore, since § 10(b) only proscribes fraudulent acts committed by "any person", the City cannot be held liable under § 10(b) or Rule 10b–5 for the acts alleged in appellants' complaint, all of which were committed prior or to the effective date of the amendment. Appellants have failed to show that Congress acted inadvertently when it omitted government entities from the 1934 Act definition of "person". We therefore affirm the district court's summary judgment in favor of the City on appellants' § 10(b) and Rule 10b–5 claims.[4] It is for Congress, not

---

**4.** We also affirm the court's dismissal of appellants' pendent state law claims against the City.

*See Aldinger v. Howard,* 427 U.S. 1 (1976).

this Court, to amend the federal securities laws. In the case of § 3(a)(9), Congress did just that, but only a little too late for appellants.

AFFIRMED.

MERRITT, Circuit Judge, dissenting.

The issue here is whether the City of Covington as a "municipal" rather than a private "corporation" is responsible for fraud under Rule 10b–5 as an issuer of municipal bonds or is exempt from liability. I disagree with the holding of our Court and the three cited District Court cases that the 1934 Exchange Act[1] definition of "person"—" 'person' means a corporation" —does not include a "municipal corporation." I disagree for four reasons that municipal corporations are exempt from liability for fraud: (1) The courts have uniformly interpreted similar phrases or definitions in the antitrust, bankruptcy, tax and numerous other fields to include municipal corporations. (2) The policy and purpose of the 1934 Act leads to the conclusion that municipal corporations are included. (3) The Securities and Exchange Commission, the agency which administers the 1934 Act, takes the position that municipal corporations are included. (4) Neither the legislative history of the 1934 Act nor the language of the 1933 Act noted by the Court suggest to me that the word "corporation" in the 1934 Act should be read to exclude a "municipal corporation."

1. *Precedent in Other Fields.*—In the antitrust field, the Supreme Court long ago recognized in *Chattanooga Foundry & Pipe Works v. City of Atlanta,* 203 U.S. 390, 396, 27 S.Ct. 65, 66, 51 L.Ed. 241 (1906), that a municipality is a "person" within the meaning of section 8 of the Sherman Act. Section 8 has a definition similar to the 1934 Exchange Act: "The word 'person' or 'persons,' wherever used in this act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country." The Court held that the City of Atlanta could therefore maintain a treble damages action under section 7 of the Act, the precursor to section 4 of the Clayton Act, against the supplier from whom the city purchased water pipes for use in constructing a waterworks system.

In *Georgia v. Evans,* 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942), the Court held that the "any person" language in section 7 of the Act included States, and thereby permitted the State of Georgia to bring an action in its own name charging injury from a combination to fix prices and suppress competition in the sale of asphalt which the State purchased annually for use in building public highways. The Court stated: "Nothing in the Act, its history, or its policy, could justify so restrictive a construction of the word 'person' in § 7 as to exclude a State." 316 U.S. at 162, 62 S.Ct. at 974. The Supreme Court has also subjected cities to antitrust liability in *City of Lafayette, Louisiana v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *but cf. Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (applying state action doctrine to exempt city from antitrust liability).

In the bankruptcy context, the Supreme Court held in *Lincoln v. Ricketts,* 297 U.S. 373, 56 S.Ct. 507, 80 L.Ed. 724 (1936), that a municipal corporation is a "corporation" and hence a "person" entitled to priority under former section 64b(7) of the Bankruptcy Act. The *Lincoln* court reasoned as follows with respect to the general definitional language of the Bankruptcy Act:

The words "having any of the powers and privileges of private corporations not possessed by individuals or partnerships" do not mean, as the context plainly shows, that those described must be "private corporations," but that the term embraces those which have powers and privileges analogous to those of private corporations and not possessed by individuals or partnerships. Municipal corporations have such powers and privileges and thus fall within the definition of the terms "corporations" as used in the

---

**1.** Securities Exchange Act of 1934, 15 U.S.C.     78a–78kk (1982).

Bankruptcy Act. *Id.* at 374–75, 56 S.Ct. at 308.

In the tax context, courts have reached a similar result when interpreting the phrase "person" under the Internal Revenue Code. In *Hoye v. United States,* 277 F.2d 116 (9th Cir.1960), the court held that under a Code provision pertaining to collection and defining the term "person" without making a distinction in its applicability to different classes of corporations, municipal corporations, such as the City of Los Angeles, were included. The Supreme Court had earlier held in *Sims v. United States,* 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959), that the same provision of the Code, which does not mention States in its definition of "person," nevertheless should be read to include States within the meaning of "person" as used in that Code provision.

Under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982), courts have held that the word "enterprise" under 18 U.S.C. § 1962—a word similar to the word "corporation"—encompasses various state and local governmental entities. The term "enterprise" under 18 U.S.C. § 1962 has been read to include a county circuit court, *United States v. Blackwood,* 768 F.2d 131 (7th Cir.) (Timbers, J.), *cert. denied,* —— U.S. ——, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985); a city police department, *United States v. Kovic,* 684 F.2d 512 (7th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982); a state district court, *United States v. Qaoud,* 777 F.2d 1105 (6th Cir.1985); a county sheriff's office, *United States v. Davis,* 707 F.2d 880 (6th Cir.1983); a state governor's office, *United States v. Thompson,* 685 F.2d 993 (6th Cir.) (en banc), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 635 (1982), and *United States v. Sisk,* 476 F.Supp. 1061 (M.D.Tenn.1979), *aff'd on other grounds,* 629 F.2d 1174 (6th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); and a state bureau of cigarette and beverage taxes, *United States v. Frumento,* 563 F.2d 1083 (3rd Cir.1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978).

2. *The Purpose of the 1934 Act.*—The Supreme Court has consistently held that the details of the securities laws must be construed in conformity with their dominant general purpose, and that, to the extent permitted by the text, they should be interpreted "so as to carry out in particular cases the generally expressed legislative policy." *See S.E.C. v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943); *accord Herman & MacLean v. Huddleston,* 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (1983).

Legislative purpose is a particularly valuable guide to statutory construction when the statute is either silent on an issue, or when the situation was unforeseen at the time the act was passed. *See* 2A Singer, *Sutherland Statutes and Statutory Construction,* § 45.09 at 40 (4th ed. 1984 rev.). In this context, the 1934 Act is silent as to whether municipal corporations were intended to be included in the term corporation as used in Section 3(a)(9) of the 1934 Act.[2] Moreover, as the Supreme Court has stated "[w]hen we deal with private actions under Rule 10b–5, we deal with a judicial oak which has grown from little more than a legislative acorn.... [I]t would be disingenuous to suggest that either Congress in 1934 or the Securities and Exchange Commission in 1942 foreordained the present state of the law with respect to Rule 10b–5." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975).

It is therefore appropriate that we should look to the general purpose of the 1934 Act and specifically, the antifraud provision, when determining whether municipal corporations should be excluded from the term corporation in Section 3(a)(9) of the 1934 Act.

The 1934 Act and its companion legislative enactments[3] were promulgated in an

2. 15 U.S.C. § 78c(9) (1982).

3. Securities Act of 1933, 15 U.S.C. § 77a–77aa (1982); Public Utility Holding Company Act of 1935, 15 U.S.C. § 79–79z–6 (1982); Trust Indenture Act of 1939, 15 U.S.C. § 77aaa–77bbbb (1982); Investment Company Act of 1940, 15 U.S.C. § 80a–1–80a–64 (1982).

attempt to combat the abuses in the financial markets which were believed to have contributed to the stock market crash of 1929 and the depression of the 1930s. *See S.E.C. v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186, 84 S.Ct. 275, 279, 11 L.Ed.2d 237 (1963); H.Rep.No. 1383, 73d Cong., 2d Sess. 3 (1934); S.Rep. No. 792, 73d Cong., 2d Sess. 3 (1934).

The 1934 Act embraces a "fundamental purpose ... to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 1470, 31 L.Ed.2d 741 (1972), *citing S.E.C. v. Capital Gains Research Bureau, Inc.,* 375 U.S. at 186, 84 S.Ct. at 279 (1963).

Congress stated that its purpose in enacting the 1934 Act was "to impose the requirements necessary to make [securities] regulation and control reasonably complete and effective." 15 U.S.C. § 78(b) (1982). The antifraud provisions of Section 10(b) were an integral part of meeting that goal.

Section 10 of the 1934 Act makes it unlawful "for any person, directly or indirectly," to "employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention" of any rule "the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j (1982). Rule 10b–5, promulgated by the Commission under this broad rulemaking authority, provides that, in connection with the purchase or sale of any security, it shall be "unlawful for any person, directly or indirectly" (1) "To employ any device, scheme or artifice to defraud," (2) "To make any untrue statement of material fact" or to omit to state a material fact so that the statements made "in light of the circumstances, are misleading," and (3) "To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." Rules and Regulations under the Securities Exchange Act of 1934, 17 C.F.R. § 240.-10b–5 (1986); *Affiliated Ute Citizens v.*

*United States,* 406 U.S. at 151, 92 S.Ct. at 1470 (1972).

The Supreme Court has repeatedly recognized that securities laws combating fraud should be construed "not technically and restrictively, but flexibly to effectuate [their] remedial purposes." *Herman & MacLean v. Huddleston,* 459 U.S. at 386–87, 103 S.Ct. at 689, *citing S.E.C. v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963); *accord Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 168, 30 L.Ed.2d 128 (1971); *Affiliated Ute Citizens v. United States,* 406 U.S. at 128, 92 S.Ct. at 1456. Congress was clear that "disregard of trust relationships by those whom the law should regard as fiduciaries, are all a single seamless web." *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. at 11–12, 92 S.Ct. at 168, *citing* H.R.Rep. No. 1383, 73d Cong., 2d Sess. 6 (1934). It is unlikely that Congress intended that an investor should be caught in this web, without a legal means of escape, merely because the corporate perpetrator of the fraud was also a municipality.

The antifraud proscriptions are "broad and ... are obviously meant to be inclusive." *Affiliated Ute Citizens v. United States,* 406 U.S. at 151, 92 S.Ct. at 1470. To narrowly interpret the term "corporation" in Section 3(a)(9) to exclude municipal corporations, without clear legislative intent to do so, would undermine both the general purpose of the 1934 Act and the specific purpose of the antifraud provision.

3. *The SEC Position.*—It is the position of the SEC that issuers of municipal securities were always included in the definition of person in Section 3(a)(9) of the 1934 Act and thus subject to Section 10(b) and Rule 10b–5 liability and that the 1975 Amendments merely reiterated this fact. *See In re New York City Municipal Securities Litigation,* 507 F.Supp. 169, 183 n. 33 (S.D. N.Y.1980). Obviously, the position of the administrative agency charged with the administration of the Act is entitled to deference and should be followed unless there

are good reasons to the contrary. The principle of deference is even more significant when the legislation in question grants to the administrative agency, as does the 1934 Act, the authority to make "rules ... necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j (1982). The historical development of liability under the 1934 Act is based primarily on Rule 10b–5, a Commission Rule, and the Commission's interpretation of its rules respecting liability are entitled to even more weight than is normally the case.

4. *Language and Legislative History Not To The Contrary.*—The majority opinion claims to be grounded on the language of the statute when it is only by virtue of *missing* language that this case arises. The Act defines "person" as a "corporation" without including the word "municipal." Silence does not constitute language as a matter of law, but only by operation of the maxim *expressio unius est exclusio alterius. See In Re Chicago, M., St. P. & Pac. R. Co.*, 658 F.2d 1149, 1158 (7th Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); 2A Singer, *Sutherland Statutes and Statutory Construction* § 47.25 at 209–10 (4th ed. 1984 rev.). Because it is not substantive law, courts may reject the maxim where appropriate. *See In Re Chicago, M., St. P. & Pac. R. Co.*, 658 F.2d at 1158 (citing cases rejecting maxim).

I believe that the propriety of applying this maxim of construction to this case has already been disposed of by the Supreme Court's opinion in *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). In *Huddleston*, the Court specifically rejected application of *expressio unius est exclusio alterius* where it would displace an action under § 10(b). *Herman & MacLean v. Huddleston*, 459 U.S. at 383 n. 23, 103 S.Ct. at 690 n. 23. In so doing, the Court reiterated its view that "such canons 'long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose.'" *Herman & MacLean v. Huddleston*, 459 U.S. at 387 n. 23, 103 S.Ct. at 690 n. 23, *quoting S.E.C. v.*

*C.M. Joiner Leasing Corp.*, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943). It is certainly contrary to the broad remedial purposes of the 1934 Act to hold that an entity engaging in the type of activity actionable under § 10(b) is nonetheless exempt from sanction simply because it was not specifically enumerated in the definitional section of the statute. As stated by the Supreme Court in *Girouard v. United States*, 328 U.S. 61, 69, 66 S.Ct. 826, 829, 90 L.Ed. 1084 (1946), "[i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." Accordingly, I do not believe that the failure to specifically enumerate municipal corporations in the definition of "person" can be dispositive of this issue.

In the alternative, the majority opinion uses the legislative history to the 1933 Act to argue that municipalities were given an exemption from the 1934 Act. This analysis is unpersuasive on several grounds. First, the 1933 Act history suggests only that the legislature perceived a constitutional problem with subjecting states to federal regulation under that Act. In retrospect, this concern was unfounded. *See Parden v. Terminal Railway of the Alabama State Dock Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (governmental entity waives immunity by participating in federally-regulated field); *Garcia v. San Antonio Metro Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (state interests protected from federal intrusion by political power, not judicial exemption). Where silence is the product of uncertainty, courts retain the power to interpret the law when the questionable issue is resolved. *See Girouard v. United States*, 328 U.S. at 69–70, 66 S.Ct. at 829–30 (reinterpretation of naturalization oath not barred where Congress failed to adopt explicitly earlier, now overrules cases). Therefore, we are not obliged to graft a constitutional misunderstanding onto the 1934 Act simply because it appears in the legislative history of an earlier statute, the 1933 Act.

Even if the legislative history of the 1933 Act were probative, this twice-removed ex-

trinsic evidence is amply rebutted by extrinsic evidence from cases discussed above interpreting other acts and by the well-established purpose of the 1934 Act. The majority concludes that congressional silence in the 1933 Act definition of "person" specifically enumerated municipal corporations, showing that Congress knew how to draft an all-inclusive definition. Alternative explanations, however, are equally persuasive. For example, Congress may have intended the term "corporations" to include municipal corporations, and therefore specific reference was unnecessary. Extrinsic evidence provided by the statutes discussed above in which municipal corporations were included as "corporations" supports this view, and is more persuasive than an argument based on silence. Finally, it is contrary to the intent expressed in the 1934 Act to interpret the definitions of "person" in such a restrictive manner. Reading "corporations" to include municipal corporations is the only interpretation consistent with both the letter of the statute and its spirit.

Accordingly, I do not join in our Court's opinion that exalts Congressional silence over Congressional purpose. Furthermore, I do not find persuasive our Court's almost total reliance on the reasoning of *In re New York City Municipal Securities Litigation,* 507 F.Supp. 169 (S.D.N.Y.1980), a district court case from the Southern District of New York that exempts New York City from allegations of massive bond fraud at a time when New York was teetering on the edge of bankruptcy.