PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/12/96**

TENTH CIRCUIT

---

BONNIE SONNENFELD, individually
and on behalf of all those similarly
situated; KARL NICOLETTI, on behalf
of himself and all others similarly
situated; HILDA EBLING STOLLER
TRUST, by Hilda Stoller, also known as
Hilda Stoller Milstein; LARRY
RABINOWITZ, on behalf of himself and
all others similarly situated,

    Plaintiffs - Appellees,

    v.

DENVER, CITY and COUNTY OF,

    Defendant- Appellant,

    and

LAZARD FRERES; PRYOR,
MCCLENDON, COUNTS &
COMPANY; GOLDMAN, SACHS &
COMPANY; LS FINANCIAL INC.;
DAIN BOSWORTH, INC.; LEHMAN
BROTHERS, INC.; ARTEMIS CAPITAL
GROUP, INC.; PIPER JAFFRAY, INC.,

    Defendants.

No. 95-1357
No. 95-1431
(Consolidated)

---

Appeal from United States District Court
for the District of Colorado
(D.C. Nos. 95-Z-468, 95-Z-492, 95-Z-548, 95-Z-728)

---

James M. Lyons (Frederick J. Baumann and JoAnn L. Vogt with him on the brief), of
Rothgerber, Appel, Powers & Johnson, Denver, Colorado, for the appellant.

Sherrie R. Savett, of Berger & Montague, P.C., Philadelphia, Pennsylvania (Genna Driscoll Kidd, of Berger & Montague, P.C., Philadelphia, Pennsylvania; and Kevin J. Yourman of Weiss & Yourman, Los Angeles, California, with her on the brief), for the appellees.

Before HENRY, LOGAN, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiffs brought these four consolidated class actions alleging the City and County of Denver made false and misleading statements, in violation of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Securities Exchange Commission Rule 10b-5, in the issuance of bonds to finance a new airport. Denver moved to dismiss, arguing there is no implied private right of action against municipalities under § 10(b) or Rule 10(b)-5 and that it was immune under the Eleventh Amendment. Denver appeals the district court's denial of its motion. We have jurisdiction over the securities law issue under 28 U.S.C. § 1292(b). The Eleventh Amendment issue is appealable under the collateral order doctrine. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, 506 U.S. 139 (1993). We affirm.

## Implied Private Cause of Action

Denver contends there is no implied private cause of action against municipalities under § 10b and Rule 10b-5. We disagree.

Section 10(b) makes it unlawful for "any person" to use or employ any manipulative or deceptive device or contrivance in connection with the purchase or sale of any security. Section 3(a)(9) (15 U.S.C. § 78c(a)(9)) defines person to include a "government, or political subdivision, agency, or instrumentality of a government."

Under this definition, local governments are subject to actions by the SEC to enforce §

10(b) and Rule 10b-5.  See In re County of Orange, 61 S.E.C. 310, 1996 WL 34362

(1996).[1]

Although § 10(b) does not provide an express private cause of action, the existence

of an implied private cause of action under § 10(b) and Rule 10b-5 is so well established

in the courts that its existence is "beyond peradventure."  Herman & MacLean v.

Huddleston, 459 U.S. 375, 380 (1983).  See Ernst & Ernst v. Hochfelder, 425 U.S. 185,

196 (1976).  The implied private cause of action was first recognized in 1946 in Kardon

v. National Gypsum Co., 69 F. Supp. 512 (E.D. Pa. 1946), and by 1971, in Superintendent

of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 13, n. 9 (1971), the Supreme Court

"confirmed with virtually no discussion the overwhelming consensus of the District

Courts and Courts of Appeals that such a cause of action did exist."  Blue Chip Stamps v.

Manor Drug Stores, 421 U.S. 723, 730 (1975).

However, it was not until 1975 that Congress added governments and political

subdivisions to the definition of person in § 3(a)(9) of the 1934 Act, see Pub. L. 94-29, §

3, 89 Stat. 97 (1975), thereby clearly making it unlawful under § 10(b) for issuers of

municipal bonds to use or employ any manipulative or deceptive device or contrivance in

connection with the purchase or sale of any security.  Denver argues Congress did not

---

[1]Although under § 3(a)(12) (15 U.S.C. § 78c(a)(12)) municipal securities are "exempted securities," § 10(b) applies to fraud in connection with the purchase or sale of "any security," and is not limited to nonexempt securities.  Section 10(b) therefore applies to transactions in municipal securities, and it is well established that underwriters, brokers, and dealers in municipal securities may be liable in a private cause of action. See In re New York City Municipal Securities Litigation, 507 F. Supp. 169, 178-80 (S.D. N.Y. 1980); Davidson v. Dean Witter Reynolds, 478 F.Supp. 494, 495 (D. Colo. 1979).

intend to create an implied private § 10(b) cause of action against municipalities when it expressly subjected governments and political subdivisions to § 10(b).

Here, the district court followed In re Citysource Securities Litigation, 694 F. Supp. 1069, 1072-75 (S.D. N.Y. 1988), and In re Washington Public Power Supply System Securities Litigation, 623 F. Supp. 1466, 1477-80 (W.D. Wash. 1985), aff'd on other grounds 823 F.2d 1349 (9th Cir. 1987), holding that by expressly including governments and political subdivisions in the definition of person, Congress subjected municipalities to § 10(b) and the well-established private cause of action under that section. Most commentators have concluded the 1975 amendment subjects municipalities to a private cause of action under § 10(b). See, e.g., Robert W. Doty & John E. Peterson, The Federal Securities Laws and Transactions in Municipal Securities, 71 Nw. U. L. Rev. 283, 286, 294 (1976); Ann J. Gellis, Mandatory Disclosure for Municipal Securities: Issues in Implementation, 13 J. Corp. L. 65, 67 (1987); Joel Seligman, The Municipal Disclosure Debate, 9 Del. J. Corp. L. 647, 650-51 n. 14 (1984); Marc I. Steinberg, Municipal Issuer Liability Under the Federal Securities Laws, 6 J. Corp. L. 277, 279-80 (1980). But see Margaret V. Sachs, Are Local Governments Liable Under Rule 10b-5? Textualism and its Limits, 70 Wash. U. L. Q. 19 (1992); Thomas J. Schwarz, Municipal Bonds and the Securities Laws: Do Investors Have an Implied Private Remedy?, 7 Sec. Reg. L. J. 119 (1979).

We agree with the district court, Citysource, and Washington Public Power. In determining whether a private cause of action is implicit in a statute not expressly providing one, the central inquiry is whether Congress intended to create a private cause of action. Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11, 23 (1979); Touche

-4-

Ross & Co. v. Redington, 442 U.S. 560, 575 (1979). Denver's reliance on Cort v. Ash, 422 U.S. 66 (1975), is misplaced. Cort's four factors have been effectively condensed into one--whether Congress, expressly or by implication, intended to create a private cause of action. Transamerica, 444 U.S. at 15-16; Touche Ross, 442 U.S. at 575. See Thompson v. Thompson, 484 U.S. 174, 189 (1988) (Scalia, J., concurring); Schmeling v. Nordham, 97 F.3d 1336, 1996 WL 564403 *8-9 (10th Cir. 1996).

In determining whether a private cause of action is implicit in a federal statutory scheme when the statute by its terms is silent on that issue, the initial focus must be on the state of the law at the time the legislation was enacted--the "contemporary legal context" existent when the new law was enacted. See Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 378. When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, the inquiry is logically different. Congress need not have intended to create a new remedy since one already existed. The question is whether Congress intended to preserve or, in this case, to extend the preexisting remedy. Id. at 378-79. Congress is presumed to be aware of prior judicial recognition of an implied private cause of action in a statute that does not expressly provide one. Id. at 379.

In 1975 when Congress enacted the amendment that defined person to include governments and their political subdivisions and thereby expressly brought municipalities within the scope of § 10(b), it was well established there was a private right of action under § 10(b). Moreover, until the Supreme Court decided Cort, 422 U.S. 66, on June 17, 1975, shortly after the 1975 amendment took effect on June 4, 1975, the federal courts, including the Supreme Court, readily found private causes of action implicit in statutes

that did not expressly provide them, following the maxim that where there is a right, there is a remedy.  See, e.g., J.I. Case Co. v. Borak, 377 U.S. 426 (1964).  Cort marked the beginning of a more restrictive approach to implied private causes of action.  See, e.g., Tamar Frankel, Implied Rights of Action, 67 Va. L.Rev. 553 (1981); Dennis Scholl and Ronald K. Perkowski, An Implied Right of Action Under Section 17(a): The Supreme Court Has Said "No," But Is Anybody Listening?, 36 U. Miami L. Rev. 41, 57-65 (1981); Note, Howard v. Pierce: Implied Causes of Action and the Ongoing Vitality of Cort v. Ash, 80 Nw. U. L. Rev. 722, 766, n. 7 (1985).

We conclude that in the contemporary legal context of 1975, Congress intended by its 1975 amendment to subject municipalities to the then well-established private right of action under § 10(b) when it expressly brought municipalities within the scope of that section.  Given the contemporary legal context of the amendment's passage, had Congress intended there to be no private cause of action against municipalities, it expressly would have stated such an exemption.

The limited legislative history on this issue does not show that Congress intended to exempt municipalities from the private cause of action under § 10(b).  The Senate report to the 1975 amendments stated:

> B.  Regulation of Municipal Securities Professionals-Not Issuers
> The Committee is mindful of the historical relationship between the federal securities laws and issuers of municipal securities.  Apart from the general antifraud provision, municipal securities are exempt from all substantive requirements.  Most significantly, this means that state and local governments do not have to comply with the registration and disclosure requirements of the Securities Act of 1933.  The bill does not in any way change this pattern, for the Committee is not aware of any abuses which would justify such a radical incursion on states' prerogatives.

S. Rep. No. 75, 94th Cong., 1st Sess., 1975 WL 12347 (Leg. Hist.) * 95 (1975).

(Emphasis added.)  The principal concern of Congress in enacting the 1975 amendments to the securities laws was to regulate underwriters, dealers, and brokers who deal in municipal bonds.  See S. Rep. No. 75.  Congress clearly intended that  municipalities would not be subject to the registration and reporting requirements imposed on underwriters, dealers, and brokers.  15 U.S.C. §§ 78c(d) and 780-4(d).  However, Congress also clearly intended that municipal securities would remain subject to the antifraud provisions.  S. Rep. No. 75, 1975 WL 12347 *91-92, 95.

The legislative history is silent on whether Congress intended municipalities to be subject to a private cause of action under § 10(b).  Although subjecting municipalities to civil liability for securities fraud under § 10(b) may have "grave political and constitutional consequences" and could "fundamentally alter the relationship between elected officials and the electorate," see In re New York Municipal Securities Litigation, 507 F. Supp. 169, 185-86 (S.D. N.Y . 1980), the lack of discussion in the legislative history is not necessarily anomalous because Congress may well have intended the 1975 amendment to the definition of person as a clarification of existing law.

It was not yet established in 1975 that the phrase "any person" in § 10(b) did not include issuers of municipal securities.  Although under the applicable version of § 3(a)(9) of the 1934 Act (15 U.S.C. § 78c(9)), "person" did not include governments and political subdivisions, it did include corporations, which arguably could include municipal corporations.  See Brown v. City of Covington, 805 F.2d 1266, 1271-75 (6th Cir. 1986) (Merritt, J., dissenting).  The SEC has taken the position that issuers of municipal securities have been included in the definition of person since 1934, and were therefore subject to liability under § 10(b) and Rule 10b-5.  See id. at 1273-74; New York

City, 507 F. Supp. at 183, n. 33; Securities Exchange Act Release No. 11,876, [1975-76 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 80,333, at 85,826-34 (Nov. 26, 1975).

It is true that courts that have considered the issue of whether a municipality is a person within the pre-1975 definition in the 1934 Act have concluded § 10(b) was inapplicable to municipalities. Brown, 805 F.2d at 1268-70; In re New York City, 507 F. Supp. at 181-82; Woods v. Homes and Structures of Pittsburg, 489 F. Supp. 1270 (D. Kan. 1980); In re. Equity Funding Corp., 416 F. Supp. 161 (C.D. Cal. 1976); Greenspan v. Crosbie, 1976 WL 841, Fed. Sec. L. Rep. (CCH) ¶ 95,780 (S.D. N.Y. 1976). They reason that if Congress had intended to include governments and political subdivisions in the definition of person, it could have done so expressly as it did in § 2(2) of the 1933 Act (15 U.S.C. § 77b(2)).

However, these cases had not yet been decided when Congress passed the 1975 amendment and there was some authority suggesting municipalities could be subject to the well-established private cause of action under § 10(b). In Baron v. Shields, 131 F. Supp. 370 (S.D. N.Y. 1954), the purchaser of bonds issued by the Bridge Commission of Bellevue, Nebraska, sued the commission, its members, the members of the securities firm that sold the bonds, and the salesman for fraud under § 10(b) and Rule 10b-5. In denying the commission's motion to dismiss, the court stated it was "insignificant" that the commission was a political subdivision or agency of a state and that the bonds would be exempted securities under § 3 of the Securities Act of 1933, 15 U.S.C. § 77c, because § 10(b) of the 1934 Act applies to sales of "any security." However, the court did not address whether the commission was a person within the meaning of the 1934 Act.

In the contemporary legal context of 1975, Congress may well have considered the

change in the definition of person a clarification of existing law rather than a change. Although that interpretation of the pre-1975 statutes may be incorrect, see, e.g., Brown, 805 F.2d at 1268-70, the issue is not whether Congress correctly perceived the state of the law, but what its perception of the state of the law was. See Merrill Lynch, 456 U.S. at 378 n. 61.

We conclude Congress intended the 1975 amendment to recognize an implied private cause of action against municipalities.

**Eleventh Amendment Immunity**

Denver contends it is an arm of the state entitled to Eleventh Amendment immunity. We disagree.

Whether a governmental entity is entitled to Eleventh Amendment immunity turns on the characterization of the entity under state law, the guidance and control exercised by the state, the degree of state funding, and the entity's ability to provide for its own financing by levying taxes and issuing bonds. See, e.g., Haldeman v. Wyoming Farm Loan Bd., 32 F.3d 469, 473 (10th Cir. 1994); Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994-97 (10th Cir. 1993). See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 279-80 (1977). The most important factor in determining whether a governmental entity is entitled to Eleventh Amendment immunity is whether a judgment against it would be paid from the state treasury. Hess v. Port Authority Trans-Hudson Corp., 115 S.Ct. 394, 404 (1994). Cities and counties are not entitled to Eleventh Amendment immunity. Hess, 115 S.Ct. at 404; Mt. Healthy, 429 U.S. at 280; Mascheroni v. Board of Regents, 28 F.3d 1554, 1559 (10th Cir. 1994). Cf. Jordano v. Steffen, 787 F. Supp. 886, 893, n. 11 (D. Minn. 1992) (holding although counties are not normally

immune under Eleventh Amendment, defendant county was immune because it acted as agent of state in administering state Medicaid plan and any judgment would be paid by the state); Oyler v. City and County of Denver, 1990 WL 134485 (D. Colo. 1990) (county department of social services immune because it acted as agent of state in administering state welfare programs and received 80 percent of its funding from the state).

However, relying on Pueblo Aircraft Service v. City of Pueblo, 679 F.2d 805 (10th Cir. 1982), cert. denied 459 U.S. 1126 (1983), Denver contends it is carrying out a state purpose in building an airport and is therefore an arm of the state entitled to Eleventh Amendment immunity. Denver's reliance on Pueblo Aircraft Service is misplaced. That case addressed a city's immunity from the antitrust laws, an entirely different issue.

Although Denver may be carrying out state policy in building an airport, see Colo. Rev. Stat. Ann. § 41-4-101 (West 1990); Pueblo Aircraft Service, 679 F.2d at 810-11, under the factors set out in Mt. Healthy and Ambus, it did not thereby become the alter ego, arm, or instrumentality of the state for purposes of the Eleventh Amendment. As a constitutionally created home rule city, Denver has a great deal of autonomy in local affairs. City and County of Denver v. Colorado, 788 P.2d 764 (Colo. 1990); Fraternal Order of Police v. City and County of Denver, 914 P.2d 483 (Colo. App. 1995), cert. granted (Colo. March 25, 1996). See Colo. Const. art. 20, § 1; Colo. Rev. Stat. §§ 30-35-101 through 30-35-202; §§ 31-2-201 - 31-1-202, 31-15-101 through 31-15- 302 (West 1990 and Supp. 1996). Denver has not shown the degree of state funding it receives, either generally or for the airport. Denver has the power to levy taxes and issue bonds. Colo. Rev. Stat. §§ 30-20-301 through 30-20-309; 30-35-201(5) and (6); 31-15-302(1)(c) and (d); 41-4-105, 41-4-203, 41-5-101 (West 1990 and Supp. 1996). Most important,

Denver has not shown that a judgment against it would be paid out of the state treasury. The airport bonds are special obligations of the City that in no event "constitute a general obligation of the City, the State or any political subdivision or agency of the State." (Appellant's append. 207.)  We conclude Denver is not an arm of the state entitled to Eleventh Amendment immunity.

The judgment of the district court is AFFIRMED.