**ELAM CONSTRUCTION, INC., a Colorado corporation; John T. Doolittle & Associates, Inc., a Connecticut corporation; and Transit '97, Inc., a Colorado corporation and issue committee, Plaintiffs,**

v.

**REGIONAL TRANSPORTATION DISTRICT, a statutory special district and political subdivision of the State of Colorado, Defendant.**

Civil Action No. 97–K–1909.

United States District Court,
D. Colorado.

Oct. 16, 1997.

Edward T. Ramey, Stephanie Y. O'Malley, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Plaintiffs.

John Stephen Pfeiffer, Meghan W. Martinez, Fairfield & Woods, P.C., Denver, CO, Walter L. Gerash, Gerash, Robinson & Gerash, PC, Denver, CO, for Defendant.

## ORDER ON MOTION TO DISMISS AND WRITTEN PRELIMINARY INJUNCTION ORDER

KANE, Senior District Judge.

On September 3, 1997, Plaintiffs Elam Construction, Inc., John Doolittle & Associates, Inc. and Transit '97, Inc. filed a Complaint for Declaratory and Injunctive Relief, a Motion for Preliminary Injunction, and a Request for Emergency Hearing upon Motion for Preliminary injunction. They seek emergency declaratory and injunctive relief against Defendant Regional Transportation District (RTD) to invalidate a board resolution which Plaintiffs assert restricts the exercise of their rights and those of others to engage in free political speech and association regarding a pending ballot issue, as well as the public's right to receive communications of public interest and concern as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. The complaint states the action arises under the First and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1988 and that jurisdiction lies pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 2202.

The Motion for Preliminary Injunction requests emergency injunctive relief enjoining RTD, together with its agents, officers, directors and employees from enforcing or taking any other action pursuant to or in furtherance of Board Resolution No. 15, Series of 1997. It seeks a further injunction requiring RTD to provide immediate personal notice and direct official notice to all persons to whom it has sent notice of the adoption of Resolution No. 15 and to the public at large.

I set a hearing on the preliminary injunction for September 5, 1997. Without complying with D.C.Colo.LR 7.1, RTD requested a continuance of the hearing. I denied the request. I considered the allegations in the Plaintiffs' pleadings, if true, indicative of an immediate violation of First Amendment rights and that, in light of the allegations regarding the upcoming date of election, time did not afford the luxury of a continuance.

The emergency hearing on the preliminary injunction was held on September 5, 1997. At the conclusion thereof I issued an injunction and a mandatory injunction. I denied RTD's request for a stay of the injunction pending its appeal to the Tenth Circuit Court of Appeals. On September 8, 1997, I entered a minute order iterating the dates and deadlines set at the hearing.

On September 10, 1997, RTD filed a Notice of Appeal to the Tenth Circuit regarding the Order entered on September 5, 1997. On September 12, 1997, RTD submitted a Proposed Notification of Injunction regarding Resolution No. 15. RTD proposed language

for direct and personal notification to bidders and proposers who were previously informed of the passage of Resolution No. 15 and a format and language for publication of the September 5, 1997 order. Plaintiffs filed a response objecting to that sentence of the proposed notices referring to RTD's request for a stay of the September 5, 1997 order and appeal to the Tenth Circuit on the grounds that the sentence defeated the purpose of the mandatory preliminary injunction.

On September 12, 1997, I issued an order approving RTD's proposed notification and publication subject to the Plaintiff's objection which I sustained. I ordered RTD to issue and cause to be published as previously ordered the proposed notification and publication save and except for the last sentence of both submitted versions. On September 23, 1997, RTD filed an Answer to the complaint.

On October 9, 1997, the Tenth Circuit entered an Order advising that it had all briefing necessary to decide the appeal and was ready to rule. The court of appeals stated that none of the parties had submitted to it a written order of injunction as required by Fed.R.Civ.P. 58 and 65(d) and that such order was essential to the determination of the appeal. The court abated consideration of the appeal until Tuesday, October 14, 1997 at 9:00 a.m. It ordered the parties, before that time to obtain and file with the clerk of that court a written order of injunction signed by me which complied with Rules 58 and 65 of the Federal Rules of Civil Procedure.

On October 9, 1997, counsel for Plaintiffs delivered a letter to my chambers attaching the Order of the Tenth Circuit of that same day. Counsel also enclosed a written Proposed Order for Preliminary Injunction, which attempted to conform with the transcript of my order from the bench. By copy of the letter, Plaintiffs' counsel requested counsel for RTD to forward any comments regarding the contents of the proposed order to me.

On October 10, 1997, RTD filed a Motion to Dismiss Plaintiffs' Complaint and Vacate September 5, 1997 Order. The motion seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2) and 12(b)(6) on the grounds that the complaint fails to allege proper jurisdiction over the subject matter and over RTD, and fails to state a claim upon which relief can be granted. On the same day, Plaintiffs filed a response to RTD's motion and RTD filed a reply.[1]

Also on October 10, 1997, the Tenth Circuit entered a further order noting that it had been advised that I was unavailable and abated the matter until close of business on Thursday October 16, 1997, requiring the parties on or before that date and time to obtain and file a written order of injunction signed by me "which complies with Rules 58 and 65 of the Federal Rules of Appellate [sic] Procedure." Since the Rules of Appellate Procedure number only forty-eight, I assume the order refers to Rules 58 and 65 of the Federal Rules of Civil Procedure.

I. *Motion to Dismiss.*

RTD argues, as an arm of the State of Colorado, it is immune pursuant to the Eleventh Amendment of the United States Constitution. Further, RTD asserts, the complaint does not allege any statutory bases which support Plaintiffs' First and Fourteenth Amendment claims as 42 U.S.C. only applies in actions against a "person" and RTD is not a "person" for the purposes of that statutory section. The other statutory sections cited by Plaintiffs are procedural only, RTD argues, and do not confer jurisdiction in the absence of a claim under Section 1983. RTD therefore requests the dismissal of the complaint and that I vacate the September 5, 1997 order which was entered under the erroneous assumption of jurisdiction.

Plaintiffs state RTD has raised the issues stated in the motion to dismiss for the first time on appeal of this court's September 5, 1997 order granting the preliminary injunction. The Tenth Circuit has, in response, ordered supplemental briefing by the parties on the issues raised in the motion to dismiss. Plaintiffs refer to the October 9, 1997 Order of the appeals court advising that it "is ready

---

1. The motion to dismiss, response and reply were filed in one day with the expectation of a ruling thereon by 9:00 a.m. on the next. Let it never again be said that the wheels of justice turn slowly!

to rule" on these issues, among others, as soon as it receives the formal written injunction from this court. Plaintiffs consider it prudent to wait and abide by the imminent ruling of the Tenth Circuit concerning the issues raised by the RTD in its new motion to dismiss. In reply, RTD points out that lack of subject matter jurisdiction may be asserted at any time by any interested party.

■ Although I would prefer not to rule on matters which the Tenth Circuit's impending ruling will undoubtedly address, before entering a written order of injunction, I think I must consider the jurisdictional issues raised in the motion to dismiss. The Eleventh Amendment's immunity has consistently been held to extend to "arm[s] of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977). It has, however, just as consistently been held not to extend to "a municipal corporation or other political subdivision" of the state. *Id.* "While an agency of the state may fall under the protective umbrella of the Amendment, political subdivisions of the state do not." *Meade v. Grubbs,* 841 F.2d 1512, 1525 (10th Cir.1988).

Recently, the Tenth Circuit explained:

> Whether a governmental entity is entitled to Eleventh Amendment immunity turns on the characterization of the entity under state law, the guidance and control exercised by the state, the degree of state funding, and the entity's ability to provide for its own financing by levying taxes and issuing bonds. *The most important factor in determining whether a governmental entity is entitled to Eleventh Amendment immunity is whether a judgment against it would be paid from the state treasury.*

*Sonnenfeld v. City and County of Denver,* 100 F.3d 744, 749 (10th Cir.1996) (citations omitted) (emphasis added), *cert. denied,* —— U.S. ——, 117 S.Ct. 1997, 138 L.Ed.2d 391. In *Sonnenfeld,* the appeals court found the City of Denver was not entitled to Eleventh Amendment immunity notwithstanding the fact that it was carrying out state policy in building an airport.

■ RTD was created and functions pursuant to the Regional Transportation District Act. Colo.Rev.Stat. § 32–9–101 to 32–9.7–102 (1997). Its purpose is "to develop, maintain, and operate a mass transportation system for the benefit of the inhabitants of the district." Colo.Rev.Stat. § 32–9–107. RTD's enabling statute describes it as "a political subdivision of the state" with the "duties, privileges, immunities, rights, liabilities, and disabilities of a public body politic and corporate." *Id.* § 32–9–119(1)(a). It has the power to provide revenue to finance its operations and "to levy uniformly throughout the district a sales tax:...." *Id.* § 32–9–119(2)(a).

With regard to RTD's liabilities, "nothing ... shall be construed to authorize the district to incur any indebtedness on behalf of or in any way to obligate the state or any political subdivision thereof, except the district." *Id.* § 32–9–145. With regard to tort claims against it, RTD does not have recourse to the state treasury. Every district or political subdivision is required to pay all judgments recoverable against it from its own reserves, appropriated or unappropriated funds, or to levy its own tax for that purpose. *Id.* § 24–10–113.

I take the law as recently given me in *Sonnenfeld* and apply the criteria in that case for determining Eleventh Amendment immunity. RTD's enabling statute expressly characterizes it a "political subdivision" and gives it extensive operational powers, including vesting it with almost total responsibility for its own funding. Most importantly, RTD has no recourse to the state treasury in the event of a judgment against it. Based on the relevant factors set out in *Sonnenfeld,* I find no basis for affording RTD Eleventh Amendment immunity.

■ With regard to whether RTD is a "person" under 42 U.S.C. § 1983, the Supreme Court held in *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), that Congress intended municipalities and other local government units to be included among those persons to whom § 1983 applies. In *Will v. Michigan Department of State Police,* the Court noted "person" in § 1983 did not include the States of the Union and that the holding in *Monell* is limited to local government not considered arms of state for Elev-

enth Amendment purposes. 491 U.S. 58, 69–70, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989). *Will* found the phrase "bodies politic and corporate" to mean "corporations, both private and public (municipal) and not to include the States." *Id.* Significantly, RTD is defined as "a political subdivision of the state" with the powers of "a public body politic and corporate." Colo.Rev.Stat. § 32–9–119(1)(a) (1997).

I have concluded RTD is not an arm of state for Eleventh Amendment purposes. Following *Will*, I find RTD is a person under *Monell* for the purposes of a § 1983 claim.[2]

IT IS ORDERED THAT RTD's Motion to Dismiss Plaintiffs' Complaint and Vacate September 5, 1997 Order is DENIED.

## II. *Written Preliminary Injunction Order.*

I enter this written order of injunction based on my detailed order from the bench at the close of the emergency hearing on September 5, 1997 and the subsequently approved notification and publication of the contents thereof. The order is framed in the present tense and is intended to operate *nunc pro tunc.*

### A. *Background.*

During the 1997 legislative session, the General Assembly of the State of Colorado enacted legislation authorizing the RTD to submit to the eligible electors of the district, at a general or ballot issue election, the question of whether the RTD shall be authorized to increase its sales tax rate throughout the district to one percent for the purpose of financing various specific construction and improvement projects pursuant to a Board-adopted plan popularly known as "Guide the Ride."

Under newly enacted Colo.Rev.Stat. 32—9–119.3 (1997), on May 20, 1997, the RTD Board of Directors passed a Board resolution adopting the "Guide the Ride" plan and submitting the statutorily mandated ballot question to the district's electors by referendum to be voted upon at the ballot issue election to be held on November 4, 1997.

A debate has commenced concerning the sales tax increase and construction and expansion programs to be financed thereby. Plaintiff Transit '97 is the principal campaign issue committee advocating passage of the referendum.

At its regular monthly meeting on August 19, 1997, the RTD Board of Directors adopted Resolution No. 15, Series of 1997, entitled " 'Guide the Ride' is Not for Sale." Citing concern "with the influence of special interests and financially concerned forces," the Resolution pertinently provides:

> . . . in the event the "Guide the Ride" sales tax referendum wins passage, the district will not enter into any financial or contractual relationship, until the year 2015 with any individual or entity who donates more than $100.00 after August 1, 1997,[3] in a contribution or a contribution in kind as define. by Colorado Statute 1–45–103, directly or indirectly, to any campaign whose purpose was to effect [sic] the outcome of the referendum. Any contracts with such individuals or entities in place before the election shall remain in place. However, no further contracts will be entered into with such individuals or entities.

Resolution No. 15 further provides that should the referendum pass, the RTD staff is directed to compile a list of campaign donors for provision to the Board, media and staff "in order that they may use it in evaluating bidders." The resolution instructs the RTD

---

**2.** Defendant cites two unpublished *nisi prius* employment decisions: (1) *Cassilan v. RTD,* Civil Action No. 90–S–1722 (D.Colo. Dec. 10, 1991), determining RTD not to be a "person" under § 1983, applying the "functional approach;" and (2) *Horton v. RTD,* Civil Action No. 91–Z–714 (D.Colo. July 28, 1993) to the effect that, because RTD's enabling statute defines it as a political subdivision of the state, it is *not* a "person" within the meaning of § 1983. In light of the Tenth Circuit's express holding in *Meade v. Grubbs,* 841 F.2d at 1525 that political subdivi-

sions of the state do not fall under the umbrella of the Eleventh Amendment and the more recent decision in *Sonnenfeld,* I reject these decisions as unpersuasive.

**3.** There was testimony at the emergency hearing that there was an amendment to Resolution 15 that gave a later date than that of August 1, 1997. No copy of the amendment was submitted. I do not consider this of import for the purposes of considering the request for injunctive relief.

staff to "inform all merchants on its list of perspective [sic] bidders" of the resolution by "whatever means deemed most efficient and speedy" no include publication in trade and news publications.

B. *Requirements for Preliminary Injunction Order.*

I find Plaintiffs have shown the requirements for a preliminary injunction are satisfied. *See Walmer v. United States Dep't of Defense,* 52 F.3d 851, 854 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995). I consider each of those requirements.

(i) *Irreparable Injury.*

■ The first requirement is that Plaintiffs must show irreparable injury. They assert they will suffer irreparable injury unless a preliminary injunction issues forthwith because Resolution No. 15 chills their and others' exercise of their First Amendment rights of political expression and association during a critical period in a short campaign.

I agree. Without doubt, the loss of First Amendment Freedoms constitutes irreparable injury. That has been the position of the Supreme Court for as long as I can recall. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976); *see also Local Organizing Comm., Denver Chapter, Million Man March v. Cook,* 922 F.Supp. 1494, 1500 (D.Colo.1996).

(ii) *Balance of Hardships.*

■ The second consideration is the balance of hardships. The threatened existing injury to Plaintiffs is the irreparable constriction of their First Amendment rights to engage in core political speech and association regarding an important public issue. The damage to RTD in this instance would be to limit its ability to unconstitutionally muzzle those taking an active position on the ballot issue and ensure they cannot fund the expression of their views. Such muzzling is clearly contrary to existing law. Thus the threatened injury to Plaintiffs fundamental outweighs whatever speculative damage the proposed injunction may cause the RTD. *See Local Organizing Committee, Denver Chap-*

*ter, Million Man March,* 922 F.Supp. at 1501.

(iii) *Public interest.*

In considering what is in the public interest, it is axiomatic that the preservation of First Amendment rights serves the public's best interest. *See id.*

(iv) *Likelihood of Success on the Merits.*

■ The final consideration is the likelihood of the Plaintiffs succeeding on the merits. The right to join together "for the advancement of beliefs and ideas" includes the right to pool money through contributions in order to make advocacy effective. *Buckley v. Valeo,* 424 U.S. 1, 65–66, 96 S.Ct. 612, 656–57, 46 L.Ed.2d 659 (1976). The RTD's imposition of a constrictive and focused contribution limit of $100 is unconstitutional and violates freedoms of both political expression and association.

Resolution No. 15 seeks to impose an unconstitutional condition upon availability of a discretionary governmental benefit by withholding "any financial or contractual relationship until the year 2015" with the RTD in the event the "Guide the Ride" ballot issue passes, unless a potential beneficiary relinquishes a protected constitutional right. The Supreme Court has held such "unconstitutional conditions" impermissible in *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

There is no constitutional justification for Resolution No. 15's purpose to mute those persons who may perceive a financial benefit in a particular outcome of an issue election. It is a clear and egregious violation of the First Amendment, more troubling in light of its passage in the face of legal advice doubting its constitutionality.

There is an exception to the rule that limits on political activity are contrary to the First Amendment. However, that exception relates to the regulating or limiting contributions to or expenditures of a candidate or candidate's committee. "[T]here is no significant state or public interest in curtailing debate and discussion of a ballot measure." *Citizens Against Rent Control/Coalition for*

*Fair Housing v. City of Berkeley,* 454 U.S. 290, 299, 102 S.Ct. 434, 439, 70 L.Ed.2d 492 (1981). For the aforesaid reasons, I find Plaintiffs have shown a likelihood of success on the merits. Accordingly, *nunc pro tunc* September 5, 1997,

IT IS ORDERED THAT a preliminary injunction be entered forthwith enjoining and prohibiting the Defendant RTD, together with all of its agents, officers, directors and employees from enforcing, seeking to enforce, or taking any other action pursuant to or in furtherance of Resolution No. 15, Series of 1997, or any other similar effort to control, intimidate, limit or interfere with the exercise of First Amendment rights.

IT IS FURTHER ORDERED THAT RTD by and through its agents and employees provide immediate personal and direct official notice at its expense in the form approved by me directed to all persons to whom it has previously sent notice of the adoption of Resolution No. 15 and to the public at large through publication in the Rocky Mountain News, the Denver Post, the Boulder Daily Camera and the Intermountain Jewish News, advising such persons and the public at large that this court has enjoined enforcement of the described resolution. Plaintiffs submit that this mandatory portion of their requested injunctive relief is necessary to restore the status quo and to undo the unconstitutional chilling effects created by the RTD's prior communications on this subject. I find this to be correct and that these are reasonable measures to correct the chilling which has taken place so far.

IT IS FURTHER ORDERED THAT, with regard to the request for a permanent injunction, the matter will be heard on Thursday, November 20, 1997 and will continue thereafter until decided. Any amendment to pleadings by the Plaintiffs or the Defendant shall be upon motion only to be filed no later than October 13, 1997. Discovery is to be completed on or before November 1, 1997. Trial briefs, if any, are to be filed on or before November 15, 1997.

IT IS FURTHER ORDERED THAT the issue of attorney fees will be litigated at the same time as the trial. Both parties are to be prepared with accurate time records and expert testimony on the reasonableness and amounts of attorney fees expended in this case, which will be considered by this court as costs.

IT IS FURTHER ORDERED THAT a bond is to be posted in the amount of one dollar. That amount is to be deposited with the Clerk of this court before the preliminary injunction becomes effective.